UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN RIVERO JUAREZ,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Defendant. | Case No.:  22-cv-1116-GPC-DEB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 4]** |

On December 8, 2022, Defendant United States of America ("Defendant") filed a Motion to Dismiss arguing the statute of limitations had expired. ECF No. 4. On January 12, 2023, Plaintiff Ruben Rivero Juarez ("Plaintiff" or "Juarez") filed a Response, (ECF No. 4), and on January 26, 2023, Defendant filed a Reply, (ECF No. 7). For the reasons below, the Court **DENIES** Defendant's Motion to Dismiss.

### BACKGROUND

On July 21, 2022, Plaintiff filed a Complaint pursuant to the Federal Tort Claims Act ("FTCA") alleging Defendant United States was negligent in "failing to adhere to the prevailing professional standard of care which is generally recognized as acceptable and appropriate by reasonably prudent similar health care providers." ECF No. 1 ("Compl.")

at 1. Plaintiff's Complaint is highly technical and does not attempt to translate or discuss in lay terms his medical records, procedures, or diagnoses. As such, the Court has made sense of the Complaint as best it could. Plaintiff alleges he arrived at a shelter in Tijuana on June 5, 2019 and had a "headache, ear pain, and low-grade fever" from July 15 to August 5. *Id.* at 3. On August 1, 2019, Plaintiff was treated at Hospital General in Tijuana. *Id.* He was given a steroid injection, anti-inflammatory, and various prescriptions. *Id.* Once taken into CPB custody on August 5, 2019, Plaintiff was held in ICE & CBP Otay Mesa Detention Center for five days. *Id.*

Plaintiff states that, once in ICE & CBP custody, he "asked every day for the first three days for medical attention," and on August 7, 2019, was "finally allowed to see a PA . . . who cleaned debris from his ear canal and prescribed ofloxacin drops." *Id.* On August 9, 2019, Plaintiff saw a different PA "with worsening symptoms" and was given ciprofloxacin, which Plaintiff states is "not the appropriate antibiotic for an ear infection." *Id.* at 4. He was also given a prescription for "ofloxacin ear drops," which Plaintiff states is "standard treatment for otitis externa." *Id.* Plaintiff and his family were released from CBP custody that same day and taken to stay with a sponsor family in Alpine, California. *Id.*

On August 10, 2019, Plaintiff saw a doctor at UCSD Medical Center who "started him on Keflex oral antibiotic," "stopped oral ciprofloxacin," and "continued ofloxacin drops." *Id.* He states that two days later he "was not improving, now vomiting, having fevers and worsening right-sided headache." *Id.* Plaintiff eventually was advised to go to the Emergency Room, where "he had a CT scan of his head and neck showing mastoiditis." *Id.* On August 13, he had a "Myringotomy procedure performed to drain fluid and relieve pressure on right tympanic membrane." *Id.* at 5. On August 15, 2019, Plaintiff "had a right mastoidectomy." *Id.* at 6. Plaintiff was released from the hospital on August 28, 2019. *Id.*

In his Complaint, Plaintiff alleges that if he had been "properly diagnosed and referred to a medical doctor or competent, supervised PA in a timely fashion after the Defendant's initial diagnosis and treatment proved unsuccessful," he would not have had to undergo surgery and his subsequent problems would have been avoided. *Id.* Plaintiff seeks compensatory damages. *Id.* at 8.

## LEGAL STANDARD

The FTCA allows for a limited waiver of federal government sovereign immunity in tort suits. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA provides two statutes of limitations periods for filing a tort claim. *See* 28 U.S.C. § 2401(b). First, a claimant must present their claim "to the appropriate Federal agency within two years after such claim accrues." *Id.* Second, a claimant must file their lawsuit in the district court "within six months after . . . final denial of the claim by the agency to which it was presented." *Id.* Section 2401(b) is not jurisdictional and may be subject to equitable tolling. *See Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1033, 1051 (9th Cir. 2013) (overruling *Marley v. United States*, 567 F.3d 1030 (9th Cir. 2009)), *aff'd United States v. Wong*, 575 U.S. 402 (2015).

## DISCUSSION

Plaintiff filed an administrative claim with CBP on July 30, 2021. ECF No. 4, Exh. A. Plaintiff's claim was denied via certified mail dated January 25, 2022. ECF No. 4, Exh. B. Thus, according to 28 U.S.C. § 2401(b)'s six-month limitations period, Plaintiff was required to file his Complaint in this Court on or before July 25, 2022. Plaintiff's Complaint was instead filed on July 29, 2022, four days late. ECF No. 1.

**I.   Section 2401(b) and Equitable Tolling**

In *United States v. Wong*, 575 U.S. 402 (2015), the Supreme Court resolved a Circuit split and affirmed the Ninth Circuit's holding in *Kwai Fun Wong v. Beebe*, 732 F.3d 1030 (9th Cir. 2013), which found "the FTCA's time bars are nonjurisdictional and

subject to equitable tolling." *United States v. Wong*, 575 U.S. 402, 420 (2015). The Supreme Court in *Wong* stated that § 2401(b) was subject to the "rebuttable presumption" of equitable tolling. *Id.* at 408-412 (discussing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990) and its holding that suits between private parties are presumptively subject to equitable tolling). This presumption in favor of equitable tolling can only be overcome if Congress "made the time bar at issue jurisdictional," and given the "harsh consequences" of a strict time bar, the Court required a "clear statement" that Congress intended to "tag a statute of limitations as jurisdictional." *Id.* at 408-10. The Court did not find that "the text nor the context nor the legislative history indicate[d] (must less [did] so plainly)" that § 2401(b) is anything other than a "standard time bar" subject to equitable tolling. *Id.* at 410.

Defendant argues that § 2401(b) is "jurisdictional." ECF No. 4 at 6 ("The statutes of limitations contained within the FTCA are a threshold jurisdictional requirement and the failure to follow them deprives a court of jurisdiction."). Defendant states the "Ninth Circuit has squarely addressed the issue presented by this case and ruled that a complaint is untimely even where it is filed six months *and one day* after the agency denies Plaintiffs' administrative claims in certified letters." ECF No. 4 at 7. These statements by Defendant are misleading and ignore the contrary controlling Ninth Circuit and Supreme Court precedent discussed above. To make its argument, the Government relies on *Adams v. United States*, 658 F.3d 928 (9th Cir. 2011), a pre-*Wong* case in which the Ninth Circuit stated § 2401(b) could not be equitably tolled. *See Adams v. United States*, 658 F.3d 928, 933 (9th Cir. 2011) (stating FTCA's statute of limitations is not subject to equitable tolling and "FTCA claimants must strictly adhere to the statute of limitations or lose the right to invoke federal jurisdiction"). As the Court discussed above, *Kwai Fun Wong* held § 2401(b) was presumptively subject to equitable tolling, and the Supreme Court affirmed this holding. *See Kwai Fun Wong*, 732 F.3d at 1048 ("We therefore hold

that § 2401(b) is a nonjurisdictional claim-processing rule subject to the presumption in favor of equitable tolling, and so overrule *Marley*'s contrary holding."). As a result, if the Court finds equitable tolling is warranted, the Court is not required to dismiss a complaint brought pursuant to the FTCA simply because it was filed more than six months after agency denial, as Defendant argues. Section 2401(b) is not a threshold jurisdictional requirement. *Wong*, 575 U.S. at 420 ("FTCA's time bars are nonjurisdictional").

## II. Equitable Tolling and Plaintiff's Complaint

Still, the Court must determine if equitable tolling is justified under the circumstances of this case. A litigant seeking equitable tolling must establish: (1) that they have pursued their rights diligently; and (2) that some extraordinary circumstances stood in their way. *See Kwai Fun Wong*, 732 F.3d at 1052 (quoting *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)); *see also Wong*, 575 U.S. at 408 (stating court may "pause the running of a limitations statute in private litigation when a party 'has pursued his rights diligently but some extraordinary circumstances' prevent[ed] him from meeting a deadline"). The first prong does not "'require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances.'" *Id.* (quoting *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011)). "Central to this analysis is whether the plaintiff was 'without any fault' in pursuing his claim." *Id.* (quoting *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996)). As to the second prong, a litigant must show "'extraordinary circumstances'" were the cause of any untimeliness. *Id.* (quoting *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009)). A "'garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.'" *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 651-52 (2010)). Equitable tolling is typically appropriate when a litigant is unable to timely file due to "'external

circumstances beyond their direct control.'" *Id.* (quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)).

Plaintiff's Opposition to the Motion to Dismiss states that Plaintiff's counsel attempted to file the Complaint on July 21, 2022. ECF No. 6 at 1. Counsel received a payment confirmation but did not receive a Notice of Electronic Filing ("NEF"). *Id.*; ECF No. 6-1 at 14 (Exh. 2) (payment confirmation dated July 21, 2022). The Opposition also states that counsel dealt with a kidney stone from July 26 to July 27. *Id.* at 2. Counsel made "several attempts without success to contact the CM/ECF Help Desk Support . . . during their working hours," and was first able to speak with someone on July 29, 2022. *Id.* CM/ECF Help Desk Support advised counsel that his case had not been filed, and counsel subsequently re-filed the identical Complaint on July 29, 2022. *Id.* Plaintiff's Opposition states that "[h]ad CM/ECF given notice of a refund of the $402 filing fee paid on July 21, 2022, [counsel] would have had Friday, July 22nd through Monday, July 25th at midnight—four days to easily re-file this matter within the FTCA's Six Month Statute of Limitations." *Id.*

**A. Diligence**

The diligence prong "'covers those affairs within the litigant's control.'" *Perez v. Diaz*, 2017 WL 882229, at *4 (S.D. Cal. Mar. 6, 2017) (quoting *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016)). The diligence inquiry is intended to determine whether a "litigant was responsible for its *own* delay.'" *Id.* (quoting *Menominee*, 136 S. Ct. at 756). Still, this prong does not require an "overzealous" or "extreme pursuit" of the claim. *Id.*

Here, Plaintiff's counsel attempted to file the Complaint on July 21, 2019, four days before expiration of the six-month time bar. *See* ECF No. 6-1, Exhs. 2 (payment confirmation dated July 21, 2019), 3 (metadata of July 21, 2019 complaint). Plaintiff paid the $402 filing fee and received a payment confirmation email stating that the payment

had been "successfully processed." *Id.*, Exh. 2. The Court finds filing the Complaint and paying the associated fee four days prior to the expiration of the six-month time limit constitutes reasonable diligence in this matter. This is not a case in which Plaintiff made no attempt to file suit prior to expiration of the limitations period, and this is not a case in which the "litigant's own mistake clearly contributed to his predicament." *Harris*, 515 F.3d at 1055. It appears there was a processing error on behalf of the district's e-filing system. It was reasonable for Plaintiff's counsel to assume the Complaint had been properly filed upon receipt of the payment confirmation email. Indeed, as Plaintiff states, "[n]o clerk of court would ever accept the filing fee for depositing without the complaint." ECF No. 6 at 3.

Further, upon learning that the initial Complaint had not been filed properly, counsel took reasonable corrective steps considering the circumstances. Counsel re-filed the identical Complaint on July 29, 2022, but as stated in the Opposition, Counsel was suffering from a kidney stone on July 26th and 27th. ECF No. 6 at 2. Counsel took the necessary steps to re-file this action upon recovering from his kidney stone and speaking with the CM/ECF Help Desk Support. Thus, the Court finds that Plaintiff and his counsel were diligent in pursuing this action.

**B. Extraordinary Circumstances**

The extraordinary circumstances prong examines the external circumstances beyond the litigant's direct control. A "'garden variety of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline,'" does not constitute extraordinary circumstances. *Kwai Fun Wong*, 732 F.3d at 1052 (quoting *Holland v. Florida*, 560 U.S. 631, 651-52 (2010)).

The Court finds extraordinary circumstances, beyond Plaintiff's direct control, are present in this case. As stated above, it was reasonable for Plaintiff's counsel to assume the Complaint was properly filed on July 21, 2019 upon email confirmation of a

successful payment. ECF no. 6-1 at 14. Plaintiff's Opposition states that "CM/ECF then lost, misplaced or deleted the pdf files." ECF No. 6 at 3. The backend failure of the district's e-filing system is clearly beyond Plaintiff's "direct control." The system's failure to file the Complaint after receipt *and confirmation* of the $402 filing fee is an extraordinary occurrence; a reasonable attorney would likely assume the Complaint had been properly filed absent a subsequent notification that the fee and/or documents were rejected.

Further, the four-day delay does not substantially prejudice the Defendant and does not significantly undercut the "notice concern that partially underlies limitations statutes." *Kwai Fun Wong*, 732 F.3d at 1053. A four-day delay does not realistically threaten the possibility that evidence has been lost or that memories have faded. *See* ECF No. 4 at 5 (citing *Ord. of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944) ("Statute of limitations . . . promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.")).

Equitable tolling exists "to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity." *Kwai Fun Wong*, 732 F.3d at 1052; *see also Harris*, 515 F.3d at 1055 (stating the rationale behind equitable tolling is "to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court"). To bar Plaintiff's suit because of a four-day delay would risk falling into "archaic rigidity." Plaintiff clearly attempted to file his Complaint and paid the filing fee four days prior to the § 2401(b) six-month deadline. For reasons unknown, the district's e-filing system rejected Plaintiff's Complaint. Equitable tolling is warranted under these circumstances.

**CONCLUSION**

For the reasons above, the Court finds equitable tolling is warranted, and Defendant's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 1, 2023

Hon. Gonzalo P. Curiel
United States District Judge